| | |
|---|---|
| GUOTAO TAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255, which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings. The Government has moved to dismiss Petitioner's motion, and Petitioner has responded. To further develop the record, the undersigned conducted an evidentiary hearing, commencing on March 10, 2016. Petitioner was present at the hearing and represented by Marsha G. Shein, and the government was represented by Assistant United States Attorney Seth Wood. Petitioner testified at the hearing of this matter and presented the testimony of her trial attorney, Patrick Roberts. The government presented the testimony of Roberts' associate, Benjamin Lankford. Following the parties' evidentiary presentation, counsel filed post-hearing briefs and the court heard final arguments of counsel on March 30, 2016. For the reasons set forth below, it is recommended that Petitioner's § 2255 motion be granted, and the government's motion to dismiss be denied.

## STATEMENT OF THE CASE

On February 4, 2014, Petitioner was charged by a federal grand jury with one count of trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320. (Indictment [DE #1].) Included in the indictment was a notice seeking forfeiture of the following property, as well as substitute forfeitable property:

> any article, the making or trafficking of which is prohibited under the offense alleged; any property used, or intended to be used, in any manner or part to facilitate the commission of the offense; and any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said offense. Such property includes, but is not limited to:
>
> 1. All counterfeit articles seized, including but not limited to various gun parts and accessories;
>
> 2. Real property having the street address of 1025 Daybreak Bluff Drive, Cary, NC 27519, and as more particularly described in a deed recorded in Deed Book 013894, Page 00924 of the Wake County Registry; and
>
> 3. The gross proceeds of the offense.

(Indictment at 2.)

On June 2, 2014, Petitioner pled guilty, pursuant to a written plea agreement, to the sole count of the indictment. Under the terms of the plea agreement, Petitioner agreed "to voluntarily forfeit and relinquish to the United States the property specified in the Indictment." (Plea Ag't [DE #19] at 2.) Among the property specified for forfeiture in the Indictment was Petitioner's residence located at 1025 Daybreak Bluff Drive, Cary, North Carolina. Subsequently, on the government's motion, the court entered a preliminary order of forfeiture as to Petitioner's residence and other property. (Prel. Forfeiture Order [DE #22].) By judgment entered September 29, 2014, Petitioner was sentenced to three years' probation, ordered to pay a $3,500 fine, and ordered to

forfeit her interest in the property specified in the preliminary order of forfeiture. Petitioner did not appeal her sentence.

With the assistance of counsel, Petitioner timely filed her § 2255 motion on September 1, 2015. (Pet. [DE #48].) The government has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Petitioner has failed to state any claim entitling her to relief.

## STATEMENT OF THE FACTS

At the hearing on Petitioner's motion, the court heard the testimony of Patrick Roberts, Benjamin Lankford, and Petitioner. Based upon the testimony and documentary evidence, the undersigned makes the following findings of fact.

**I.      Patrick Roberts**

Patrick Roberts is an attorney licensed to practice in the State of North Carolina and has been practicing in the area of criminal defense for fourteen years. He is a member of the bar of this court and has represented approximately fifty clients in federal criminal cases, with five or six of those cases going to trial. (Evid. Hr'g Tr. [DE #77] at 14-15.)

In early 2014, Petitioner retained Roberts to represent her in connection with the underlying criminal case. (Evid. Hr'g Tr. at 15.) Roberts reviewed the Indictment and discovery with Petitioner, and Roberts believed the government had a strong case against Petitioner. (Evid. Hr'g Tr. at 16, 29-30, 43.) The Indictment contained a notice informing Petitioner that the government was seeking to forfeit certain property, including real property located at 1025 Daybreak Bluff Drive, Cary, North Carolina, 27519. (Evid. Hr'g Tr. at 30-31.) Over the course of Roberts' representation, Petitioner asked Roberts several questions regarding personal property that was taken from her home but only one question concerning her real property. (Evid. Hr'g Tr. at 24, 31-32.)

3

Although Petitioner's native language is Chinese, an interpreter was not obtained for any of Roberts' meetings with Petitioner. Roberts testified he did not believe an interpreter was necessary based on his interactions with Petitioner and Petitioner's background. (Evid. Hr'g Tr. at 16-17, 19-20.)

Prior to receiving a plea offer from the government, Roberts submitted a proposal for deferred prosecution, which was rejected. (Evid. Hr'g Tr. at 17, 33-34.) Upon receiving the government's plea offer, Roberts presented the offer to Petitioner. On Roberts' recommendation, Petitioner ultimately agreed to accept the offer. (Evid. Hr'g Tr. at 35.) Before Petitioner's Rule 11 hearing, Roberts had ten to fifteen meetings with Petitioner to discuss trial strategy, plea strategy, and possible terms and conditions of the plea. Roberts gave Petitioner a copy of the written plea agreement to read, and he reviewed the plea agreement with her before the Rule 11 hearing. Roberts did not, however, read the agreement line-by-line to Petitioner. (Evid. Hr'g Tr. at 17-19, 35.)

Prior to Petitioner entering her plea, Roberts recommended that Petitioner consult an immigration attorney to discuss any immigration consequences, and Roberts gave Petitioner the names of two immigration attorneys. Petitioner found a different immigration attorney with whom Roberts spoke. (Evid. Hr'g Tr. at 21.) From that conversation, Roberts was led to believe that a probationary sentence would improve Petitioner's chances of remaining in the United States. However, Roberts was aware that a criminal conviction involving over $10,000 is considered an aggravated felony and is a deportable offense. (Evid. Hr'g Tr. at 21-22.) Roberts testified that he advised Petitioner of that fact and gave Petitioner a copy of the statute before advising her to take the plea. Petitioner subsequently signed the plea agreement. (Evid. Hr'g Tr. at 23.)

Roberts advised Petitioner to take the plea offered by the government because Petitioner's primary concerns were avoiding prison and avoiding deportation. (Evid. Hr'g Tr. at 20.) Roberts

4

believed Petitioner had a greater chance of receiving a probationary sentence if she pled guilty because of the adjustment for acceptance of responsibility and the mitigation factors he planned to offer at sentencing. (Evid. Hr'g Tr. at 21.)

Prior to Petitioner's case, Roberts had limited experience with federal forfeiture matters. Roberts testified that he has conducted only limited research of forfeiture issues and has never litigated forfeiture issues in court. (Evid. Hr'g Tr. at 23-24.) He also admitted he is not familiar with the defenses available in forfeiture proceedings, such as proportionality or excessive fines defenses. (Evid. Hr'g Tr. at 28.) He did not consult with an attorney experienced in federal forfeiture matters concerning Petitioner's case. (Evid. Hr'g Tr. at 38.)

Roberts knew that Petitioner had purchased her home prior to the alleged offense and that no illegal funds were used at the time of the purchase. (Evid. Hr'g Tr. at 27.) He testified that Petitioner had confirmed, however, making mortgage payments from monies received from the sale of counterfeit items. Additionally, he understood Petitioner had received and stored counterfeit items at her home. For these reasons, it was Roberts' opinion that forfeiture of the home was mandatory under the federal statute. (Evid. Hr'g Tr. at 27-28.)

Roberts considered Petitioner's home to be a bargaining tool to avoid incarceration. (Evid. Hr'g Tr. at 24.) He thought there were two mortgages on the home, which was not correct. (Evid. Hr'g Tr. at 28-29.) He did not conduct any investigation to determine Petitioner's net equity in the home and never discussed with Petitioner any defenses to forfeiture. (Evid. Hr'g Tr. at 24, 28-29, 38.) Roberts did not approach the government to discuss a bifurcated plea agreement, did not advise Petitioner of such an option, and did not attempt to negotiate the forfeiture beyond the terms of the plea agreement. (Evid. Hr'g Tr. at 24-25, 29.) Prior to her Rule 11 hearing, Petitioner asked Roberts

about the forfeiture of her home; Roberts told Petitioner there was a possibility she would lose her home. (Evid. Hr'g Tr. at 24.)

Between the Rule 11 hearing and sentencing, Petitioner did not express any concerns regarding the forfeiture of her home. At some point after sentencing, Petitioner asked Roberts about her home. Roberts referred her to Christian Dysart, a federal criminal defense lawyer who practices in this district, on the issue of forfeiture.[1] (Evid. Hr'g Tr. at 36-37.)

## II. Guatao Tan

Petitioner, a fifty-two-year-old woman, is originally from China where she was a medical doctor. In 1999, she relocated to Canada with her husband and she became a Canadian citizen. (Presentence Rep. [DE #25] at 6.) She graduated from a registered nursing program in Canada and later transferred her license to the United States (Evid. Hr'g Tr. at 46) after being admitted as a lawful permanent resident in 2003 (Presentence Rep. at 6). Her native language is Chinese and, although she is able to speak and write in English, her English is broken. Petitioner has difficulty understanding legal terms and requires an interpreter for court proceedings. At the evidentiary hearing, Petitioner explained that she has trouble following court proceedings even with the assistance of an interpreter due to the simultaneous interpretation. (Evid. Hr'g Tr. at 6-8, 59.)

While working as a nurse in 2010, Petitioner purchased a home at 1025 Daybreak Bluff Drive in Cary, North Carolina. Petitioner used her own money, as well as money from family in China, to purchase the home. (Evid. Hr'g Tr. at 47-48.) Petitioner also obtained a mortgage from the Bank of America for $66,000. (Evid. Hr'g Tr. at 55.) No money from the sale of counterfeit goods was used at the time she purchased the home. Petitioner has also denied using any profits

---

[1] No evidence was presented to establish whether Petitioner actually spoke with Mr. Dysart.

from the sale of counterfeit goods to pay the mortgage or bills for the home. (Evid. Hr'g Tr. at 48.) Aside from Roberts' testimony at the evidentiary hearing, the government has not presented, at the Rule 11 hearing, sentencing or evidentiary hearing, any evidence to the contrary.

At the time Petitioner entered her guilty plea, the home had a fair market value in excess of the balance remaining on the $66,000 mortgage. (Evid. Hr'g Tr. at 76-77.) Evidence has not been presented as to the purchase price paid by Petitioner, or as to the value of the home or the balance owed on the mortgage at the time of Petitioner's plea. However, tax records indicate Petitioner purchased the property in March 2010 for $325,000, and the property was assessed in 2016 for $376,074. *See* Wake County Real Estate Data, Account Summary for 1025 Daybreak Bluff Dr., http://services.wakegov.com/realestate/Account.asp?id=0364059&stype=addr&stnum=1025&stname=daybreak+bluff+drive&locidList=30749&spg=1 (last visited Oct. 25, 2016).

Before Petitioner's sentencing, a paper was placed on the front door of the home and a photograph was taken. However, Petitioner did not understand what was happening, and no one provided her with an explanation. (Evid. Hr'g Tr. at 79, 84.)

Petitioner's conduct following her Rule 11 hearing and sentencing is not consistent with an understanding that she had lost her home. Even after her sentencing, Petitioner continued to live in the home and to expend substantial sums of money in connection with the property. Petitioner testified that after sentencing she made capital improvements to the home and that no one instructed her to stop. (Evid. Hr'g Tr. at 77-78.) Records maintained by the Wake County Tax Collector further indicate Petitioner paid $3,038.63 in ad valorem taxes on the property on November 21, 2014, approximately two months after sentencing. *See* Wake County Real Estate Data, Account Summary for 1025 Daybreak Bluff Dr., *supra*. Following her daughter's acceptance into the North

Carolina School of Science and Math, Petitioner made arrangements for her daughter to move from California in the spring of 2015 in order to live with Petitioner. (Evid. Hr'g Tr. at 81-83.)

On April 14, 2015, personnel of the Department of Homeland Security ("DHS") came to Petitioner's home and posted a notice on the door. Petitioner was taken to the DHS' Durham office, asked to sign a forfeiture receipt, and told her home belonged to the government. After an exchange in which Petitioner explained that no one had told her she would have to give up her house and that her daughter was coming from California the following day, Petitioner was released. (Evid. Hr'g Tr. at 81-82.) Petitioner was allowed to stay in the home until April 20, 2015, when she was taken into custody by DHS' Immigration and Customs Enforcement ("ICE"). At the time of the evidentiary hearing in this matter, Petitioner remained in ICE custody awaiting deportation. (Evid. Hr'g Tr. at 82-84.)

During plea negotiations, it was important for Petitioner not to serve a prison term so she might work and help support her family. She testified Roberts advised her to plead guilty. Before signing the plea agreement at Roberts' law office, Petitioner met with Roberts' associate, Benjamin Lankford. Lankford read the agreement to Petitioner before she signed it. Neither Roberts nor Lankford spoke with Petitioner about any defenses to forfeiture, and Lankford did not discuss in detail the issue of forfeiture. (Evid. Hr'g Tr. at 49-51, 78.)

Petitioner testified she did not understand she had to "pay [her] house for [her] case." (Evid. Hr'g Tr. at 81.) Petitioner does not remember anyone explaining to her that she would have to forfeit her entire home. Moreover, Petitioner testified she never read the plea agreement before signing it and did not understand it – that she "trust[ed] Mr. Roberts to do everything." (Evid. Hr'g Tr. at 56.)

8

Petitioner had trouble understanding what was being said during her Rule 11 hearing because the judge and the interpreter were speaking at the same time. Petitioner testified that she was confused during the hearing when she pled guilty but that she did not explain that to the judge. Petitioner explained:

> That day I was – (inaudible) – lawyer told me I plead guilty. I understand – (inaudible) – when I go to the court I'm going to plead guilty. When the Judge asks me something I will say yes, this is what I was told when I come to the court, I'm going to plead guilty. Exactly what he asked me, I don't understand. But I did say I plead guilty.

(Evid. Hr'g Tr. at 58.)

When asked by the judge whether she had read the plea agreement before signing it, Petitioner stated that she had. (Rule 11 Tr. [DE #42] at 15.) Petitioner also responded affirmatively when the judge asked her whether she had gone over the plea agreement with Roberts and whether she understood the contents of the plea agreement. (Rule 11 Tr. at 15-16.) The court then had the following colloquy with Petitioner:

> **[Court:]** I want you to listen carefully now because I'm going to summarize for the public record my understanding of this plea agreement. If my understanding and yours differ in any way, I want you to tell me about it when I get through, okay? You understand?
>
> **[Petitioner:]** Uh-huh, yes.
>
> **[Court:]** My understanding is that you have agreed to plead guilty to this indictment.
>
> **[Petitioner:]** Yes.
>
> **[Court:]** Fully understanding that –
>
> **[Petitioner:]** Yes.
>
> **[Court:]** – if you will just hold your comments now until I get through.

> Fully understanding that you're charged with trafficking in counterfeit goods, on which you face a maximum term of imprisonment of ten years, a maximum term of supervised release of three years, a maximum term upon revocation of supervised release of two years, a maximum fine of $250,000, restitution and a special assessment in the amount of $100.
>
> That you've agreed to waive your right to appeal your conviction and sentence on any ground, including any guideline range issue, reserving only the right to appeal from a sentence in excess of the advisory guideline range.
>
> You've waived your right to contest your conviction or sentence in any post-conviction proceeding. You have preserved your right to present, by way of appeal or motion, any contention you may have as to any ineffective assistance of counsel or prosecutorial misconduct which you may not have known about at the time of the entry of your plea.
>
> You've agreed to assist the United States in the recovery and forfeiture of any illegally obtained assets. Specifically, you agree to voluntarily forfeit and relinquish the property specified in the indictment. You agree to sign any document necessary to effectuate that forfeiture, and otherwise comply with requirements necessary to complete the forfeiture.
>
> The government has agreed, if I approve this, to not further prosecute you for conduct giving rise to this indictment. However, this obligation is limited solely to the U.S. Attorney for the Eastern District of North Carolina and does not bind any other state or federal prosecution entity.
>
> The government reserves the right to make a sentencing recommendation and to present evidence and information in rebuttal to anything you or your lawyer may say at the time of sentencing.
>
> Have I fairly and accurately summarized the terms and conditions of this plea agreement, as you understand it?
>
> **[Petitioner:]** Yes.
>
> . . . .

(Rule 11 Tr. at 16-18.)

At sentencing, Petitioner did not tell the court that she had been confused at the Rule 11 hearing nor did she ask to change her plea. The court granted Petitioner a downward variance, noting she had an "absolute sterling reputation" aside from this one offense. The court imposed a

10

probationary sentence of three years, a fine of $3,500, a special assessment of $100 and ordered that Petitioner "forfeit to the United States [her] interest in the property specified in the preliminary order of forfeiture entered on July 22, 2014." (Sent. Tr. [DE #43] at 17-19.) Petitioner maintains that she would not have pled guilty had she known she would lose her home. (Evid. Hr'g Tr. at 84.)

## II.    Benjamin Lankford

Benjamin Lankford was licensed to practice law in the State of North Carolina on May 2, 2014, approximately one month before Petitioner entered her guilty plea, and he has been an associate in Roberts' law office since that time. Lankford's duties include legal research and writing, reviewing discovery, and interviewing witnesses. (Evid. Hr'g Tr. at 85-86.) In May 2014, Roberts requested that Lankford do some research related to Petitioner's case. Additionally, Lankford met personally with Petitioner four to six times. Two times were just the two of them, and the other meetings included Roberts. (Evid. Hr'g Tr. at 87.) An interpreter was never used in the meetings in which Lankford participated, and English was spoken throughout the meetings. (Evid. Hr'g Tr. at 88.) Lankford reviewed Petitioner's plea agreement with her on May 29, 2014. Although he has no specific recollection of the meeting with Petitioner, he believes he read the plea agreement to her line-by-line. (Evid. Hr'g Tr. at 89-91.) At that time, he had not received any training in forfeiture proceedings, had not participated in any plea agreements or trials concerning forfeiture, and had not handled a federal criminal case. (Evid. Hr'g Tr. at 92-93.)

## **DISCUSSION**

Petitioner's § 2255 motion asserts two claims: (1) that Petitioner's attorney was ineffective in failing to give her "proper or adequate advice on entering the plea provision to forfeit her entire personal home"; and (2) that her attorney was ineffective in "failing to object to the forfeiture condition without an established nexus or factual basis." (Pet'r's Mot. Vacate [DE #48] at 4-5.) At

11

the hearing of this matter, it became clear that Petitioner's claims hinge on the voluntariness of her guilty plea – whether Petitioner understood she was forfeiting her home as part of her plea agreement.

"A guilty plea must be 'a voluntary and intelligent choice among the alternative courses of action open to the defendant,'" and a "defendant must know the direct consequences of his guilty plea in order for it to be knowing and voluntary." *United States v. Wagner*, 88 Fed. App'x 593, 594 (4th Cir. 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (footnote omitted). A defendant entering a guilty plea simultaneously waives several constitutional rights. *Id.* Consequently, such a waiver must be "'an intentional relinquishment or abandonment of a known right or privilege'" to be valid under the Due Process Clause. *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Whether a waiver is knowing and intelligent depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson*, 304 U.S. at 464).

The circumstances surrounding Petitioner's waiver and plea suggest her decision to plead guilty was not knowing and intelligent. There is no question here that the court complied with the procedural requirements of Rule 11, and Petitioner responded affirmatively when asked whether she understood the charges against her, whether she was satisfied with her lawyer's services, and whether she understood her rights and the possible immigration consequences of pleading guilty.

12

(Rule 11 Tr. at 11-14.) She also indicated she read the plea agreement prior to signing it and felt as though she understood the contents of the agreement. (Rule 11 Tr. at 15-16.) There is also no question that a factual basis existed for Petitioner's guilty plea and that Petitioner knew she was pleading guilty to trafficking in goods bearing counterfeit marks.

However, it is not clear that Petitioner knew and understood all of the terms and conditions of her plea agreement. Petitioner understood that by pleading guilty pursuant to the plea agreement, she had a good chance of receiving probation in lieu of an active sentence. Due in large part to the language barrier that existed, though, it appears Petitioner did not understand other aspects of her plea, such as the forfeiture provision contained in the plea agreement. Petitioner testified at the evidentiary hearing that she sometimes has difficulty understanding English and has to use a dictionary. She further stated she had trouble understanding what was being said at her Rule 11 hearing and sentencing because the judge and interpreter were speaking simultaneously.[2] This confusion is illustrated by the following passage of the Rule 11 hearing:

[Court:] How much formal education do you have?

[Petitioner:] You mean how many years?

[Court:] Mr. Interpreter, it would be best if you repeat her answer.

[Interpreter:] (Speaking in Chinese.)

[Court:] No, tell me what she said.

[Interpreter:] You mean how many years I have been in school?

[Court:] Yes.

---

[2] Petitioner experienced similar problems at the evidentiary hearing on her § 2255 motion and requested that the interpreter not interpret the proceedings verbatim and that Petitioner be allowed to raise her hand when interpretation was needed.

13

**[Petitioner:]** College.

**[Court:]** You've had some college?

**[Petitioner:]** Yes.

**[Court:]** Of what nation are you a citizen?

**[Petitioner:]** Canada.

**[Court:]** Canada?

**[Petitioner:]** (Nodding.)

**[Court:]** Are you now or have you recently been under the care of any doctor or psychiatrist?

**[Interpreter:]** I did have a classmate who is a psychiatrist.

. . . .

**[Court:]** Have you received a copy of the Bill of Indictment in the case?

**[Petitioner:]** Yes.

**[Court:]** Have you had time to read it and go over it with your lawyer?

**[Petitioner:]** Yes.

**[Court:]** If you are going to answer for yourself, you need to speak up.

**[Petitioner:]** Yes.

**[Court:]** I take it that you have some ability to read and understand the English language; is that correct?

**[Petitioner:]** Not complete.

**[Court:]** Well, have you had someone to translate the Bill of Indictment to you?

**[Petitioner:]** Yes.

. . . .

**[Court:]** Do you fully understand exactly what you are charged with?

14

[**Petitioner:**] Yes.

[**Court:**] Do you see any necessity of me explaining the charges to you any further?

[**Petitioner:**] (Speaking in Chinese.)

**Court Reporter:** Judge, she didn't answer in English.

[**Court:**] Let me go back and ask it again. You said that you understand what you are charged with. My question to you now is: Do you see any necessity of me explaining these charges to you any further, any more than you already understand?

[**Petitioner:**] No.

[**Court:**] How do you plead to the charges?

[**Petitioner:**] Yes.

[**Court:**] You must plead either guilty or not guilty.

[**Petitioner:**] Yes, plead guilty.

(Rule 11 Tr. at 10-12.)

The court recognized the existence of a language barrier in this case and accordingly provided Petitioner with an interpreter at her court proceedings. The court also ensured the Indictment had been translated for Petitioner. However, Roberts testified that he did not have an interpreter present during his meetings with Petitioner because he believed it was unnecessary based upon Petitioner's educational background and his interactions with her. (Evid. H'rg Tr. at 17, 20.) He did not have the written plea agreement translated for Petitioner, nor did he read the agreement line-by-line to her. (Evid. Hr'g Tr. at 19-20.) Rather, he gave her a copy to read on her own. (Evid. Hr'g Tr. at 19.) Roberts did not meet with Petitioner at the time she signed the plea agreement. Petitioner met instead with Mr. Lankford, an associate who had been practicing law less than a month and who had no experience with federal criminal cases or forfeiture issues. Petitioner asserts

15

Case 5:14-cr-00015-BR   Document 84   Filed 11/10/16   Page 15 of 19

she did not read or understand the plea agreement despite having answered otherwise at her Rule 11 hearing.

Whether Petitioner read or had the plea agreement read to her is not dispositive, however. Although Petitioner's home could certainly have been viewed as a bargaining tool, as Roberts testified, the evidence in this case does not support a finding that Petitioner pled guilty after having been fully apprised of the forfeiture provision contained in her plea agreement. Roberts did not make any inquiry into the value of Petitioner's real property or the balance owed on the loan and was, therefore, not aware of Petitioner's equity interest in the real property. (Evid. Hr'g Tr. at 28-29.) Roberts was not familiar with the Eighth Amendment's proscription against excessive fines as applied to forfeitures and did not consider whether the forfeiture of Petitioner's home was grossly disproportionate to her offense, which involved infringement totaling less than $30,000 according to the parties' stipulation. Nor did Roberts discuss with Petitioner whether she had any defenses to the forfeiture of her home.

The evidence before the court also indicates Roberts never explained to Petitioner that her home would be forfeited to the government under the terms of the plea agreement. At the evidentiary hearing, Roberts testified that when Petitioner asked about her home, he told Petitioner there "was a *possibility* that they would take her home." (Evid. Hr'g Tr. at 24 (emphasis added).) This misconception as to the effect of the forfeiture provision was not corrected either at the Rule 11 proceeding or Petitioner's sentencing. In summarizing the terms of the plea agreement at the Rule 11 proceeding, the court described the forfeiture provision as follows:

> You've agreed to assist the United States in the recovery and forfeiture of any illegally obtained assets. Specifically, you agree to voluntarily forfeit and relinquish the property specified in the indictment. You agree to sign any document necessary to effectuate that forfeiture, and otherwise comply with requirements necessary to complete the forfeiture.

16

(Rule 11 Tr. at 17.) The plea agreement did not specify that Petitioner had agreed to forfeit her residence, and no factual basis or nexus for the forfeiture was provided in the plea agreement or proffered at the Rule 11 hearing.

A review of the sentencing hearing transcript further suggests that Roberts, himself, may have misunderstood the legal consequences of Petitioner's plea. On July 22, 2014, a preliminary order of forfeiture was entered forfeiting Petitioner's interest in the real property and authorizing the government to seize and post notice of its intent to dispose of the property. Notwithstanding the entry of this order, Roberts urged the court at sentencing to impose a probationary sentence so that Petitioner would not lose her home:

> She has worked, *she owns a home*, she helps to support her children who reside with her ex-husband, and *all of those things are at issue in this case* if a sentence – if she is placed in custody which would cause her to lose her nursing license *as well as her home* . . . .

(Sentencing Tr. [DE #43] at 8 (emphases added).)

Even after the sentencing, Petitioner continued to reside in her home until she was taken into custody by the Department of Homeland Security on April 20, 2015. (Evid. H'rg Tr. at 82.) During this period of time, she made improvements to the home, paid ad valorem taxes on the property and arranged for her daughter to come from California to live with her in order to attend school at the North Carolina School of Science and Math. (Evid. Hr'g Tr. at 82-83.)

Having carefully considered the evidence presented and the arguments of counsel, the undersigned finds Petitioner was not fully apprised of the legal consequences of her plea agreement due, in large part, to the language barrier that existed. Because she did not fully appreciate the consequences of her guilty plea, her waivers were not knowingly and voluntarily made.

Petitioner did not raise the voluntariness issue on direct appeal and the issue would ordinarily be subject to procedural default. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Cause exists where an external, objective factor impeded the petitioner's ability to appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A "showing that the factual or legal basis for a claim was not reasonably available" or that the procedural default was the result of ineffective assistance of counsel would constitute cause. *Id.*

The evidence here establishes that Petitioner, through no fault of her own, was not aware of the forfeiture of her home (and thus the basis of her claim) until April 2015, well after the time for filing an appeal had expired. While it is unclear the extent to which Petitioner's attorney appreciated the consequences of forfeiture in this case, the evidence establishes that the consequences were not fully and effectively communicated to Petitioner. Petitioner's default was the direct result of a language barrier that prevented her from effectively communicating with her attorney and from understanding the consequences of her plea. As the basis for Petitioner's claim was not reasonably available to her prior to the expiration of the time for appeal and Petitioner asserts she would not have pled guilty had she fully understood the consequences of her plea agreement, Petitioner has demonstrated cause and prejudice excusing her procedural default. Accordingly, the undersigned recommends that the judgment in this case be vacated.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that the Petitioner's Motion to Vacate [DE #48] be GRANTED, and the government's Motion to Dismiss [DE #54] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the parties, who are hereby advised as follows:

You shall have until **November 28, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline may bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 10th day of November 2016.

_____
KIMBERLY A. SWANK
United States Magistrate Judge